Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| LUZ N. VÉLEZ LUGO<br>Recurrida<br><br><br>v.<br><br>RICHARD M. STEARNS<br>Peticionario | KLCE202301253 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso número: D DI2019-0003<br><br><br>Sobre: RUPTURA INRREPARABLE DESESTIMACIÓN, FALTA DE JURISDICCIÓN |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

**S E N T E N C I A**

En San Juan, Puerto Rico, a 13 de diciembre de 2023.

Comparece ante *nos*, Richard M. Stearns (peticionario) y nos solicita que revisemos una *Resolución* emitida el 20 de octubre de 2023 y notificada el 23 de octubre de 2023, por el Tribunal de Primera Instancia (TPI), Sala de Menores y Relaciones de Familia de Bayamón. Mediante dicho dictamen, el TPI declaró *No Ha Lugar* los planteamientos del peticionario sobre la controversia de jurisdicción sobre la materia y campo ocupado con relación al *Parental Kidnapping Prevention Act* (PKPA).

Por los fundamentos que expondremos a continuación, se expide el auto de *certiorari* y se *confirma* la *Resolución* recurrida.

**I.**

El 4 de abril de 2019, el foro de instancia emitió una *Sentencia* de divorcio mediante la cual declaró roto y disuelto el matrimonio habido entre las partes. En la referida *Sentencia,* se le concedió a la recurrida la custodia monoparental de los tres (3) hijos de las partes y la patria potestad a ambos de manera compartida.

Según surge del expediente ante nuestra consideración, la parte peticionaria adujo que el 27 de agosto de 2023, Luz N. Vélez Lugo (recurrida) se trasladó con los menores al estado de Nuevo México por razón de su empleo con la agencia Federal de Manejo de Emergencias (FEMA). Sostuvo que dicho traslado ocurrió con su anuencia. Así las cosas, el peticionario indicó que el 12 de septiembre de 2023, la recurrida viajó a Puerto Rico dejando a los menores solos en el estado de Nuevo México. Manifestó que el 14 de septiembre de 2023, advino en conocimiento de que los menores se encontraban sin supervisión y se dirigió a Nuevo México a recogerlos.

Asimismo, el peticionario señaló que mientras estuvo en Nuevo México ningún adulto llegó a velar por los menores y debido a que no podía permanecer por más tiempo en el estado se vio en la obligación de llevarse a los menores para su hogar en Indiana. Así, arguyó que, ante la emergencia suscitada, el 23 de septiembre de 2023, presentó una petición de custodia de emergencia en la corte del Condado de Hamilton en Indiana. Esbozó que, en respuesta al recurso que instó en su estado de residencia, el 25 de septiembre de 2023, la recurrida presentó ante el TPI una *Urgentísima Moción en Solicitud de Orden Urgente*. En esta, la parte recurrida solicitó la intervención del foro de instancia debido a que el peticionario había recogido a los menores y se los había llevado a su residencia en Indiana sin su consentimiento.

El 26 de septiembre de 2023, el foro recurrido emitió una *Orden* mediante la cual le ordenó a la recurrida que aclarara la razón por la cual los menores estaban en Nuevo México y cuál fue su residencia por los pasados seis (6) meses. Además, el TPI le ordenó al peticionario que devolviera a los menores salvo que existiera justa causa. Posteriormente, la recurrida presentó una *Moción en Cumplimiento de Orden* en la cual sostuvo que los menores se

encontraban en Nuevo México porque ella se encontraba trabajando para FEMA, que los menores llevaban residiendo en Vega Alta, Puerto Rico por los pasados seis (6) meses y que habían llegado a Nuevo México el 21 de agosto de 2023.

Luego de varios incidentes procesales, el 6 de octubre de 2023, el peticionario presentó una *Moción en Cumplimiento de Orden.* En la misma, trajo a la atención del foro de instancia la controversia sobre la jurisdicción sobre la materia. Acentuó que contrario a lo alegado por la recurrida, los menores no residen en Puerto Rico ni tenían la intención de regresar a Puerto Rico. Así pues, expresó que, desde el 10 de agosto de 2023, los menores estaban matriculados en escuelas en el estado de Nuevo México y que la recurrida se había mudado a dicho estado sin intención de regresar a Puerto Rico. Oportunamente, el 12 de octubre de 2023, el TPI celebró una Vista en la cual atendió el asunto sobre la jurisdicción.

Consecuentemente, el 12 de octubre de 2023, el TPI emitió una *Resolución* reducida a escrito el 20 de octubre de 2023 y notificada el 23 de octubre de 2023. Mediante dicho dictamen, el foro de instancia reiteró su jurisdicción para atender los asuntos, ordenó la entrega de los menores a la recurrida, autorizó que los menores viajaran a Nuevo México con su madre y expresó que de demostrarse que los menores han perdido su domicilio y residencia en Puerto Rico, el Tribunal podría evaluar si amerita renunciar a su jurisdicción.

Inconforme con esa determinación, el 10 de noviembre de 2023, la parte peticionaria acudió ante *nos* mediante un recurso de *certiorari* y señaló la comisión de los siguientes errores:

**PRIMER ERROR: Erró el TPI al determinar que tenía jurisdicción sobre la materia alegadamente al tener jurisdicción exclusiva y continúa conferida por el PKPA a pesar de que en su Resolución emitida surge**

**que ninguna de las partes reside en Puerto Rico y el propio PKPA establece que, si ninguna de las partes residen [sic] en Puerto Rico, dicho estado pierde jurisdicción.**

**SEGUNDO ERROR: Erró el TPI al determinar que la demandada sigue siendo domiciliada/residente de Puerto Rico fundamentado en el hecho de que la recurrida tiene un "*deployment*" de la agencia federal FEMA aun cuando la recurrida no es militar activo de las fuerzas armadas y más importante aún, esta indicó que recibió una oferta de trabajo.**

El 13 de noviembre de 2023, la parte peticionaria presentó una *Moción en Auxilio de Jurisdicción*. Ese mismo día, emitimos una *Resolución* mediante la cual se le concedió a la parte recurrida diez (10) días para que presentara su posición al recurso. El 22 de noviembre de 2023, la parte recurrida presentó un *Alegato en Oposición a Certiorari*. Con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

**II.**

**A. Certiorari**

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. *Rivera Gómez y otros v. Arcos Dorados Puerto Rico, Inc. y otros*, 2023 TSPR 65, 212 DPR ___ (2023). Véase, además, *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *800 Ponce de León Corp. v. AIG*, 205 DPR 163, 174 (2020); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009). En particular, es un recurso mediante el cual se solicita la corrección de un error cometido por un foro inferior. *Torres González v. Zaragoza Meléndez, supra*. Así pues, la determinación de expedir o denegar un recurso de *certiorari* está enmarcada en la discreción judicial. *800 Ponce de León Corp. v. AIG, supra*. No obstante, la discreción judicial para expedir o no el auto de *certiorari* solicitado no ocurre en un vacío ni en ausencia de unos parámetros. *Torres González v. Zaragoza Meléndez, supra*.

A esos efectos, la Regla 52.1 de Procedimiento Civil (32 LPRA Ap. V) limita la autoridad de este Tribunal de Apelaciones para revisar las órdenes y resoluciones interlocutorias que dictan los tribunales de instancia por medio del recurso discrecional del *certiorari*. Véase, *Scotiabank of PR v. ZAF Corp.,* 202 DPR 478, 486-487 (2019). En lo pertinente, la precitada disposición reglamentaria, *supra*, dispone que:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia, al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Si ninguno de esos elementos está presente en la petición ante la consideración del Tribunal, procede abstenerse de expedir el auto, de manera que se continúen los procedimientos del caso, sin mayor dilación, ante el Tribunal de Primera Instancia. *García v. Asociación,* 165 DPR 311, 322 (2005); *Meléndez Vega v. Caribbean Intl. News,* 151 DPR 649, 664 (2000); *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986).

Con el fin de que podamos ejercer de una manera sensata nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso, la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari. Torres González v. Zaragoza Meléndez, supra.* En lo pertinente, la precitada disposición reglamentaria dispone lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari*, o de una orden de mostrar causa:

A.  Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.

B.  Si la situación de hechos planteada es la más indicada para el análisis del problema.

C.  Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D.  Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E.  Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F.  Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G.  Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Nótese que, distinto al recurso de apelación, el auto de *certiorari*, por ser un recurso discrecional, debemos utilizarlo con cautela y por razones de peso. *Pueblo v. Díaz de León, supra*, pág. 918.

Ahora bien, el Tribunal Supremo de Puerto Rico reiteradamente ha indicado que la *discreción* significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009); *García v. Padró*, 165 DPR 324, 334 (2005). El adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990). Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. *Pueblo v. Rivera Santiago, supra*, pág. 581; *S.L.G. Flores, Jiménez v. Colberg*, 173 DPR 843 (2008).

**B. Jurisdicción**

La jurisdicción es el poder o la autoridad que posee un tribunal para considerar y decidir casos o controversias con efecto vinculante para las partes. *MCS Advantage, Inc. v. Fossas Blanco*, 211 DPR 135 (2023). Así pues, la falta de jurisdicción de un tribunal incide directamente sobre el poder mismo para adjudicar una controversia. *Allied Mgmt. Group, Inc. v. Oriental Bank*, 204 DPR 374 (2020).

Así, los tribunales no tenemos discreción para asumir jurisdicción donde no la hay. *Martínez v. Junta de Planificación*, 109 DPR 839, 842 (1980). Pues, la ausencia de jurisdicción puede conllevar la nulidad de los dictámenes emitidos. *Allied Mgmt. Group, Inc. v. Oriental Bank, supra.* En efecto, la falta de jurisdicción no puede ser subsanada, ni podemos arrogarnos la jurisdicción que no tenemos. *Maldonado v. Junta de Planificación,* 171 DPR 46 (2007). Incluso, aunque las partes no lo planteen, estamos obligados a velar por nuestra jurisdicción. *Lagares Pérez v. E.L.A.*, 144 DPR 601 (1997). Por lo cual, es norma reiterada que las cuestiones jurisdiccionales son de índole privilegiada y deben ser resueltas con preferencia. *Allied Mgmt. Group, Inc. v. Oriental Bank, supra.*

**C. *Parental Kidnapping Prevention Act***

El *Parental Kidnapping Prevention Act* (PKPA), 28 USCA sec. 1738 A (a), es un estatuto federal que procura facilitar la ejecución de los decretos judiciales estatales relacionados a custodia y derechos de visita, así como prevenir la competencia y el conflicto interjurisdiccional. *Colón Vega v. Díaz Lebrón*, 211 DPR 548 (2023). Véase, además, *Cancel Rivera v. González Ruiz*, 200 DPR 319 (2018). Consecuentemente, los tribunales de los estados están obligados a dar entera fe y crédito a los dictámenes de custodia que emiten sus equivalentes. *Colón Vega v. Díaz Lebrón, supra.* Así pues, como regla

general no pueden modificar un dictamen de custodia que emitió otro estado de forma compatible con la ley. Íd. Véase, además, *Collazo Dragoni v. Noceda González,* 198 DPR 476 (2017); 28 U.S.C. sec. 1738A (a).

En cambio, el inciso (b) del PKPA define *estado de residencia* como el estado donde el menor ha residido por seis (6) meses consecutivos antes de la fecha en que comenzaron los procedimientos de custodia. *Collazo Dragoni v. Noceda González, supra.* Véase, además, 28 U.S.C. sec. 1738A (b) (8). Asimismo, nuestro máximo Foro ha establecido que, para determinar si un dictamen de custodia emitido es consistente con la ley, de modo que aplique la prohibición del inciso (a), el inciso (c) establece que se examinará: (1) si el tribunal que lo emitió tenía jurisdicción bajo las leyes de su estado, y (2) si se cumplieron con una de varias bases jurisdiccionales. *Collazo Dragoni v. Noceda González, supra.* Véase, además, 28 U.S.C. sec. 1738A (c). Estas bases jurisdiccionales, que tienen un orden preferencial, son: (A) jurisdicción del estado de residencia del menor; (B) jurisdicción por contactos significativos con el foro; (C) jurisdicción para situaciones en las que el menor fue abandonado o se encuentra en estado de emergencia; (D) jurisdicción cuando no existe otro estado con jurisdicción o ha declinado ejercerla, o (E) jurisdicción continua. Íd.

Por otra parte, el inciso (d) del PKPA establece que el estado que haya emitido el decreto original de custodia conserva jurisdicción continua sobre el asunto para hacer valer y revisar su determinación original. 28 U.S.C. sec. 1738A (d). Véase, además, *Collazo Dragoni v. Noceda González, supra.* Para conservar la jurisdicción se deben cumplir los siguientes requisitos: (1) que el decreto original de custodia sea compatible con las disposiciones del PKPA; (2) que el foro original mantenga jurisdicción bajo sus propias leyes, y (3) que dicho foro continúe siendo el estado de residencia

del menor o al menos de una de las partes. Íd. Una vez establecida la jurisdicción continua, la misma prevalece sobre cualquier otra base jurisdiccional. Íd.

Mientras, el inciso (e) establece otro requisito para la validez de los decretos de custodia: notificación adecuada a los padres y oportunidad de ser oídos previo a la determinación. 28 U.S.C. sec. 1738A (e). Así, como excepción al inciso (d), el inciso (f) reconoce a los tribunales la autoridad para modificar una determinación de custodia emitida originalmente por otro estado, si: (1) el estado que pretende modificar el decreto ostenta jurisdicción, y (2) el foro original perdió su jurisdicción para modificar el decreto o renunció a ella.  28 U.S.C. sec. 1738A (f). Además, el inciso (g) previene los conflictos interjurisdiccionales al prohibirle a los tribunales ejercer jurisdicción si otro tribunal ejerció jurisdicción conforme a la ley. *Collazo Dragoni v. Noceda González, supra.* Véase, además, 28 U.S.C. sec. 1738A (g). Por último, el inciso (h) prohíbe modificar el decreto inicial a menos que el tribunal inicial haya perdido o renunciado su jurisdicción. 28 U.S.C. sec. 1738A (h).

De otro lado, nuestro ordenamiento jurídico establece que los tribunales de Puerto Rico poseen jurisdicción para atender los casos de custodia en cualquiera de las siguientes situaciones: (1) cuando se posee jurisdicción *in personam* sobre todos los litigantes o aun sobre una sola de las partes; (2) cuando el menor está domiciliado en Puerto Rico; (3) cuando el menor está físicamente presente o tiene su residencia habitual en Puerto Rico; y, (4) cuando el menor es ciudadano o nacional de Puerto Rico. *Collazo Dragoni v. Noceda González, supra*, citando a *Marrero Reyes v. García Ramírez,* 105 DPR 90 (1976). Así pues, a pesar de que una sentencia de custodia es válida si se cumplen los requisitos jurisdiccionales, el PKPA impone una preferencia por el estado de residencia del menor para

que la sentencia goce de entera fe y crédito en los demás estados. *Ortega v. Morales*, 131 DPR 783 (1992).

No obstante, lo anterior, en *Santiago v. Setongo Kabuka*, 166 DPR 526, 536 (2005), nuestro máximo Foro estableció que,

> [S]i bien el PKPA da preferencia al estado de residencia del menor sobre cualquier otra jurisdicción, la ley confiere jurisdicción continua al estado o foro que haya emitido un decreto original de custodia para que haga valer o revise sus determinaciones originales. 28 U.S.C.A. sec. 1738A (d). **Debe entenderse que ante la existencia de un decreto original que se ajuste a las disposiciones del estatuto, la jurisdicción continua es el criterio principal, aun cuando esta no sea la jurisdicción de residencia del menor**. (Énfasis en el original).

### D. Abuso de discreción

Nuestro Tribunal Supremo ha establecido que, los tribunales apelativos no interferirán con las facultades discrecionales de los foros primarios, exceptuando aquellas circunstancias en las que se demuestre que estos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Rivera Gómez y otros v. Arcos Dorados Puerto Rico, Inc. y otros, supra*; *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465 (2022). Por lo cual, se requiere que nuestra intervención en esta etapa evite un perjuicio sustancial. *Rivera Gómez y otros v. Arcos Dorados Puerto Rico, Inc. y otros, supra*.

En lo pertinente, nuestro máximo Foro ha definido la discreción judicial como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Rivera Gómez y otros v. Arcos Dorados Puerto Rico, Inc. y otros, supra*. Véase, además, *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 DPR 651, 657-658 (1997). Así pues, el ejercicio de este discernimiento se encuentra estrechamente relacionado con el concepto de razonabilidad. *Rivera Gómez y otros v. Arcos Dorados Puerto Rico, Inc. y otros, supra*. Conforme a lo anterior, la discreción no implica

que los tribunales puedan actuar de una forma u otra en abstracción del resto del derecho. Íd. Véase, además, *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 435 (2013).

Asimismo, se ha señalado que un tribunal abusa de su discreción:

> cuando el juez no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando el juez, por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en este, o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente. *Rivera Gómez y otros v. Arcos Dorados Puerto Rico, Inc. y otros*, *supra*; *SLG Zapata-Rivera v. J.F. Montalvo*, *supra*.

### III.

Tomando en consideración que los señalamientos de error están estrechamente relacionados entre sí, procederemos a discutirlos de forma conjunta. *Veamos*.

En el recurso que nos ocupa, el peticionario plantea como primer señalamiento de error que, incidió el foro de instancia al determinar que tenía jurisdicción sobre la materia alegadamente al tener jurisdicción exclusiva y continúa conferida por el PKPA, a pesar de que en la *Resolución* emitida surge que ninguna de las partes reside en Puerto Rico y que el propio PKPA establece que si ninguna de las partes reside en Puerto Rico dicho estado pierde jurisdicción. Además, como segundo señalamiento de error, sostiene que erró el TPI al determinar que la demandada sigue siendo domiciliada/residente de Puerto Rico fundamentado en el hecho de que la recurrida tiene un *deployment* de la agencia federal FEMA aun cuando la recurrida no es militar activo de las fuerzas armadas y más importante aún, esta indicó que recibió una oferta de trabajo.

En cambio, la recurrida señaló que es el foro de instancia quien tiene y mantiene jurisdicción conforme al PKPA. Indicó,

además, que el decreto original de custodia lo ostenta el foro recurrido, pues su intención es permanecer en Puerto Rico. Así pues, arguyó que los menores han estado domiciliados y residiendo en Puerto Rico durante los seis (6) meses antes de que iniciaran los procedimientos de custodia. Añadió que, el Tribunal de Indiana declaró no ha lugar la petición de custodia de emergencia y les reconoció jurisdicción a los tribunales de Puerto Rico.

En el caso ante *nos*, el 4 de abril de 2019, se le concedió a la recurrida la custodia monoparental de los tres (3) hijos de las partes y la patria potestad a ambos de manera compartida. Posteriormente, la recurrida se trasladó con los menores al estado de Nuevo México por razón de su empleo con FEMA. Luego de que el peticionario adviniera en conocimiento de que la parte recurrida dejó a los menores en Nuevo México para viajar a Puerto Rico de emergencia, este viajó a dicho Estado y se llevó a los menores para su hogar en Indiana. Consecuentemente, el peticionario presentó una petición de custodia de emergencia en la corte del Condado de Hamilton en Indiana.

Así las cosas, la recurrida presentó ante el TPI un escrito mediante el cual solicitó la intervención del foro de instancia debido a que el peticionario había recogido a los menores y se los había llevado a su residencia en Indiana sin su consentimiento. Luego de varios trámites procesales, el foro de instancia reiteró su jurisdicción para atender los asuntos, ordenó la entrega de los menores a la recurrida, autorizó que los menores viajaran a Nuevo México con su madre y expresó que de demostrarse que los menores han perdido su domicilio y residencia en Puerto Rico, el Tribunal podría evaluar si amerita renunciar a su jurisdicción.

Según el derecho que antecede, el PKPA procura facilitar la ejecución de los decretos judiciales estatales relacionados a custodia y derechos de visita, así como prevenir la competencia y el conflicto

interjurisdiccional. *Colón Vega v. Díaz Lebrón, supra.* Consecuentemente, los tribunales de los estados están obligados a dar entera fe y crédito a los dictámenes de custodia que emiten sus equivalentes. Íd. Así pues, como regla general no pueden modificar un dictamen de custodia que emitió otro estado de forma compatible con la ley. Íd.

Así pues, las disposiciones del PKPA aplican ante un conflicto interjurisdiccional, es decir, cuando se solicita que un tribunal modifique el decreto de custodia emitido por otro estado. *Collazo Dragoni v. Noceda González, supra.* En el caso de epígrafe, el peticionario solicitó la custodia de emergencia de los menores en la corte del Condado de Hamilton en Indiana. Consecuentemente, manifestó que el TPI no tiene jurisdicción sobre la materia, pues ninguna de las partes reside en Puerto Rico y el propio PKPA establece que si ninguna de las partes reside en Puerto Rico dicho estado pierde jurisdicción. No le asiste la razón.

En primer lugar, es menester aclarar que el inciso (b) del PKPA define *estado de residencia* como el estado donde el menor ha residido por seis (6) meses consecutivos antes de la fecha en que comenzaron los procedimientos de custodia. *Collazo Dragoni v. Noceda González, supra.* En el caso que aquí nos ocupa, al momento en que comenzaron los procedimientos de custodia los menores no habían residido por seis (6) meses consecutivos en el estado de Nuevo México.

Además, surge de la *Resolución* recurrida que de la prueba presentada en la Vista el foro de instancia consideró que el traslado a Nuevo México es un *deployment.* Por lo tanto, tomando en consideración que fue la Juez de instancia quien realizó la apreciación de la prueba relacionada al *deployment,* no intervendremos con su apreciación. Así, no hay evidencia en el

expediente ni se presentó transcripción de la Vista que nos ponga en posición de variar las determinaciones emitidas por el foro de instancia.

En segundo lugar, en este caso los tribunales de Puerto Rico tienen jurisdicción continua conforme con las disposiciones del PKPA, debido a que: (1) el decreto de custodia original emitido el 4 de abril de 2019, fue compatible con las disposiciones de la ley; (2) los tribunales de Puerto Rico tenían jurisdicción bajo nuestro ordenamiento jurídico, y (3) Puerto Rico sigue siendo el estado de residencia de una de las partes, la recurrida y los menores. Véase, *Collazo Dragoni v. Noceda González, supra*; *Santiago v. Setongo Kabuka, supra*. Así pues, el estado que haya emitido el decreto original de custodia conserva jurisdicción continua sobre el asunto para hacer valer y revisar su determinación original. 28 U.S.C. sec. 1738A (d); *Collazo Dragoni v. Noceda González, supra*. Una vez establecida la jurisdicción continua, la misma prevalece sobre cualquier otra base jurisdiccional. Íd.

Finalmente, reiteramos lo resuelto por el Tribunal Supremo de Puerto Rico en *Santiago v. Setongo Kabuka, supra:*

> [S]i bien el PKPA da preferencia al estado de residencia del menor sobre cualquier otra jurisdicción, la ley confiere jurisdicción continua al estado o foro que haya emitido un decreto original de custodia para que haga valer o revise sus determinaciones originales. 28 U.S.C.A. sec. 1738A (d). **Debe entenderse que ante la existencia de un decreto original que se ajuste a las disposiciones del estatuto, la jurisdicción continua es el criterio principal, aun cuando esta no sea la jurisdicción de residencia del menor**. (Énfasis en el original).

En conclusión, a la luz del PKPA y ante la existencia de un decreto original de custodia, son los tribunales de Puerto Rico quienes ostentan jurisdicción continua sobre la materia.

**IV.**

Por los fundamentos antes expuestos, los que se hacen formar parte del presente dictamen, se expide el auto de *certiorari* y se *confirma* la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones